UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| SUE ANN DRAPER )<br>of County of Androscoggin )<br>State of Maine. )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>STATE OF MAINE, Department of )<br>Health and Human Services )<br>)<br>MARY MAYHEW, in her official capacity )<br>as Commissioner, State of Maine )<br>Department of Health and Human )<br>Services )<br>)<br>Defendants ) | Docket No. 2:13-cv-00028-JAW |

**PLAINTIFF SUE ANN DRAPER'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS WITH INCORPORATED MEMORANDUM OF LAW**

Plaintiff Sue Ann Draper requests the Court to deny Defendants' 12(b)(1) and (6) motion to dismiss her complaint and states as follows.

**Factual Allegations**

Since childhood and all material times Sue Ann Draper has been a deaf individual who requires an American Sign Language interpreter for effective communication. (Complaint¶7) Plaintiff is and has been for several years a recipient of services from the State of Maine's

1

Department of Health and Human Services (DHHS). (Complaint ¶10) These services require her to meet with the DHHS's representatives on a regular basis. (Complaint¶11)

On March 10, 2010 Plaintiff went to DHHS for a scheduled appointment and there was no interpreter. (Complaint ¶12 and ¶15) On April 21, 2010 Plaintiff went to DHHS for a scheduled appointment and there was no interpreter. (Complaint ¶21 and ¶23) On May 5, 2010 Plaintiff went to DHHS for a scheduled appointment and there was no interpreter. (Complaint ¶27)

On April 15, 2010 Plaintiff dropped into DHHS for emergency assistance in order to remain in her home and there was no interpreter. It is the policy and practice of the Defendants to not provide Video Remote interpreting for American Sign Language users. It is the policy and practice of the Defendants to provide instant interpreter services via telephone for hearing individuals with limited English proficiency. (Complaint ¶17-20) Plaintiff has requested DHHS to provide Video Remote Interpreting so that she can communicate without having to wait weeks for an appointment or in cases where the interpreter is cancelled or does not show up. Draper's request has been denied. (Complaint ¶28-29)

As a result of the Defendants' actions Draper has experienced inconvenience, travel expenses and other pecuniary losses, mental anguish, and emotional stress. (Complaint ¶31)


**I   Plaintiff has Alleged Sufficient Fact to Satisfy the Elements of a Claim for Failure to Accommodate**

Defendants argue that Draper's claims under the ADA, Section 5O4 of the Rehabilitation Act and the Maine Human Rights Act should be dismissed because she has not alleged sufficient

2

facts to satisfy the elements of a claim for failure to accommodate.  Specifically Draper failed to allege that she was denied services or excluded from participation in any of the DHHS's programs. Defendants rely on judicial statements of the elements of a claim for failure to accommodate in an ADA case and a Section 504 case.  A review of each of the Defendants' examples shows that the Defendants' reliance is misplaced.

In *Parker v Universidad de Puerto Rico*, 225 F.3d 1, 5 (1st Cir. 2000) the district court granted judgment as a matter of law in favor of the University  after the plaintiffs had  presented their case-in-chief during a jury trial. The District Court concluded that the Parkers had failed to present sufficient evidence to establish that Parker had been discriminated against by reason of his disability under Title II of the ADA. The plaintiffs appealed.

Beginning its analysis, the First Circuit Court of Appeals stated "pursuant to the plain language of Title II, a plaintiff must establish: (1) that he is qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or *was otherwise discriminated against*; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

The First Circuit Court of Appeals reviewed the evidence in the light most favorable to the Plaintiffs.   That is, the Parker family went to the Botanical Gardens of the University of Puerto Rico for a Girl Scout ceremony.  Mr. Parker required a wheelchair because of a prior stroke.  Parker used the designated handicapped pathway to the Gardens. As he neared the bottom of the path, his wheelchair flipped and he landed on the ground.  Parker got back into his wheelchair and attended the awards ceremony. The next day he realized that he broke his clavicle.

The court found that the University had a duty to make the Gardens "readily accessible" to and "usable" by individuals with disabilities. The University could accomplish this by providing at least one route that a person in a wheelchair can use to reach the Gardens *safely*. The court looked at the entire experience of the disabled individual. The fact that Parker actually attended the ceremony in the Gardens on that day was not controlling. The Appeals found in favor of the Parkers and vacated the judgment and remanded the case back to the court for trial.

Defendants also rely on *Maine Human Rights Commission v Sunbury Primary Care, P.A.*, 770 F. Supp. 2d 370, 408 (D. Me. 2011) to support their argument that Draper has not alleged sufficient facts to satisfy the elements of a claim for failure to accommodate. Specifically Draper failed to allege that she was denied services or excluded from participation in any of the DHHS's programs.

It is true that the court in *Maine Human Rights Commission v Sunbury* stated in its denial of a Motion to Dismiss and Summary Judgment that the plaintiff in a Section 504 claim must prove four elements: "(1) that she was disabled; (2) that she sought services from a federally funded entity; (3) that she was "otherwise qualified' to receive those services; and (4) that she was denied those services "solely by reason of her…disability." However the Defendants' reliance on this case to convince the Court that Draper's complaint should be dismissed for failing to allege that she was denied services or excluded from participation in any of the DHHS's programs is misplaced. The facts of the case show that Sunbury Primary Care provided medical care for the Plaintiff, but refused to provide interpreters. The case revolved around the issue of not whether services were provided, but whether the Deaf Plaintiff could effectively

4

communicate with her health care provider. She had the right to be able to communicate expressively as well as receptively.

This Court should apply a broad definition of the elements of a claim for Title II ADA discrimination due to the fact that 42 USC §12132 includes "or be subjected to discrimination" Discrimination could include cases were services are provided, but in a humiliating manner. For example discrimination could be found when a disabled individual has to crawl to the court room.  See *Tennessee v Lane*, 541 U.S. 509 (2004).

In the present case Draper has made a plain statement of the claim showing that she is entitled to relief.  Draper alleged in her complaint that since childhood and all material times she has been a deaf individual who requires an American Sign Language interpreter for effective communication.  She stated that on four different times in less than two months she was denied an interpreter at a meeting with DHHS. She alleged that able bodied limited English speakers had access to instant interpreting services. Draper also alleged in her complaint that she has experienced inconvenience, travel expenses and other pecuniary losses, mental anguish, and emotional stress as a direct result of the Defendants' failure to provide an interpreter.

### III The ADA Claims Against the Defendants are Not Barred by the 11th Amendment

The Eleventh Amendment grants States immunity to suits brought by private citizens in federal court.  Congress can abrogate that immunity where (1) Congress unequivocally expressed its intent to abrogate the States' sovereign immunity in the statue at issue and (2)

Congress acted pursuant to a valid grant of constitutional authority. *Kimel v Florida Board of Regents*, 528 U.S. 62, 73 (2000). Since Congress stated in the ADA that States shall not be immune under the Eleventh Amendment from an action in State or Federal Court. 521 U.S.C. 12202, the issue before the Court is whether the statutory provision removing Eleventh Amendment immunity for private suits under Title II of the ADA is a valid exercise of Congress's authority under Section 5 of the Fourteenth Amendment.

The Supreme Court has held that when Congress seeks to remedy or prevent unconstitutional discrimination Congress under Section 5 of the Fourteenth Amendment has the power to enact prophylactic legislation that proscribes facially constitutional conduct that is discriminatory in effect, if not in intent, to carry out the basic objectives of the Equal Protection Clause. *Tennessee v Lane*, 541 U.S. 509, 520, 523 (2004).

In *City of Boerne v Flores*, 521 U.S. 507, 519-20 (1997) the Supreme Court held that Section 5 legislation is valid if there is "a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end."  To make this determination a three step analysis must be undertaken: (1) identify the constitutional right or rights that Congress sought to enforce when it enacted the ADA, (2) whether there was a history of unconstitutional discrimination to support Congress's determination that prophylactic legislation was necessary; and (3) whether Title II is an appropriate response to this history and pattern of unequal treatment.

It is not always clear what constitutional right Congress sought to enforce when it enacted the ADA. In *Tennessee v Lane*, the Supreme Court stated that Title II seeks to enforce the Fourteenth Amendment's "prohibition on irrational disability discrimination," and the

6

constitutional guarantees under the Due Process Clause of the Fourteenth Amendment and the Confrontation Clause of the Sixth Amendment in the context of access to courts. (The Supreme Court found these rights to be fundamental rights, but the Court did not specify the need for a fundamental right to be at stake in order to satisfy the first part of the three part *Boerne* analysis. See footnote 2 *Association for Disabled Americans, Inc. v Florida International University*. 405 F 3rd 954, 957 (11th Cir 2005))

In this case Plaintiff Draper is Deaf and requires a sign language interpreter to effectively communicate. She has received services from DHHS for several years and is required to meet with DHHS representatives on a regular basis. Within less than two months Draper was not provided an interpreter four times.  On one of those occasions she rushed to DHHS to obtain emergency assistance to remain in her home.  DHHS does not have remote video interpreting for times when Deaf individuals need emergency assistance, but it does provide instant interpreting services for individuals with limited English proficiency.

Applying the Boerne three prong test for congruence and proportionality, in this case the constitutional rights Congress sought to enforce by the ADA were Equal Protection and Due Process rights under the Fourteenth Amendment and the right to petition the government under the First Amendment.  These are fundamental rights. However, if the Court should find that the constitutional rights allegedly violated by the Defendants are not fundamental, than these rights must be considered extremely important rights.

As for the second prong of the Boerne congruence and proportionality test, the Supreme Court in *Lane*, 541 U.S. at 528, 529, considered the record supporting Title II as a whole and conclusively held that Congress had documented a sufficient historical background

of unconstitutional disability discrimination in the provision of public services to justify enactment of a prophylactic remedy. Specifically looking at the facts in this case, in 42 U.S.C. §12101 "Findings and purpose" of the ADA, Congress reported in (a) (3) that discrimination against individuals with disabilities persists in such critical areas as communication and access to public services.   Considering the findings in *Lane* and the "findings and purpose" in the beginning of the ADA, the second Boerne prong is satisfied in this case.

The third prong of the Boerne congruence and proportionality test – whether Title II is an appropriate response to this history and pattern of unequal treatment- is met in this case also.  Draper wished to communicate with her government in an attempt to acquire and maintain services. As mentioned above, Congress specifically noted in 42 U.S.C. §12101 (a) (3) that discrimination against individuals with disabilities persist in such critical areas as communication and access to public services. The consequences of being denied needed services can be severe.  Title II's requirement of the provision of auxiliary aids and services is not overly burdensome and is an appropriate response to the history and pattern of unequal treatment.

Defendants' reliance on *Doe v Division of Youth and Family Services*, 148 F. Supp. 2d 462 (D.N.J. 2001) is misplaced. The court stated in *Doe*, Id at 487, "the analysis and holding here is limited to the issue before it- whether Congress validly abrogated state sovereign immunity in Title II of the ADA as applied to these plaintiffs and to their claims based on the alleged DYSF policy of separating HIV-positive newborns from their HIV-positive mothers when the mothers refuses to consent to treatment. It must be emphasized that the Court's holding in no way calls into question the broad remedial provisions of Title II directed at the physical accessibility of

state facilities and public modes of transportation or any other provisions of Title II. Those provisions of Title II are not before the Court."

In this case the Court should follow *Association for Disabled Americans the United States of America, Intervenor v Florida International University*, 405 F. 3d 954 (11 Cir. 2005). In *Association for Disabled Americans* three students sued after being denied interpreters and auxiliary aids by a state educational institution. The court found that discrimination against disabled students in education affects disabled persons' future ability to exercise and participate in the most basic rights and responsibilities of citizenship, such as voting and participation in public programs and that Title II of the ADA was an appropriate response to the history of unequal treatment. Id. At 959.

### III  The Claims Against Mayhew in her Official Capacity are Not Duplicative Because the Exception  under Ex Parte Young Applies

In *Ex parte Young*, 209 U.S. 123 (1908) the Supreme Court created an exception to Eleventh Amendment immunity for suits against state officials seeking to enjoin ongoing violations of federal law. To determine whether the Ex parte Young exception applies "the court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Guttman v G.T. S. Khalsa*, 669 F 3d 1101, 1126 (10th Cir. 2012)

In this case the ongoing violation of federal law is that DHHS does not have the capacity to effectively communicate with Deaf individuals on an emergency bases in violation of title II of the ADA and Section 504 of the Rehabilitation Act. DHHS provides such technology for those

9

needing English language interpreting, but refuses to provide Remote Video Interpreting for the Deaf.  Draper has requested an injunction enjoining Defendants to adopt and implement policies and procedures to ensure that Defendants carry out services in a nondiscriminatory manner.

CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests that the Court dismiss the Defendants' Motion to Dismiss.


Dated: February 25, 2013                                   /s/Elizabeth Gallie

Elizabeth Gallie
Maine Center on Deafness
68 Bishop Street
Portland, Maine 04103
(207) 797 7656 (telephone)
(207) 797 9791 (fax)
bgallie@mcdmaine.org
Attorney for Plaintiff for Sue Ann Draper


**CERTIFICATE OF SERVICE**

I hereby certify that on February 25, 2013, I electronically filed this Reply to Defendants' Motion to Dismiss with the Clerk of the United States District Court, District of Maine, using the CM/ECF system, which will send notification of such filing to all parties of record in this case.

Dated: February 25, 2103				/s/ Elizabeth Gallie

Elizabeth Gallie
Maine Center on Deafness
68 Bishop Street
Portland, Maine 04103
(207) 797 7656 (telephone)
(207) 797 9791 (fax)
bgallie@mcdmaine.org
Attorney for Plaintiff Sue Ann Draper

11