UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

SUE ANN DRAPER                              )
of County of Androscoggin                   )
State of Maine.                             )
                                            )
    Plaintiff                          )
                                            )          Docket No. 2:13-cv-00028-JAW
    v.                                 )
                                            )
STATE OF MAINE, Department of               )
Health and Human Services                   )
                                            )
MARY MAYHEW, in her official capacity       )
as Commissioner, State of Maine             )
Department of Health and Human              )
Services                                    )
                                            )
    Defendants                         )

**PLAINTIFF SUE ANN DRAPER'S OBJECTION TO MAGISTRATE JOHN H RICH III'S RECOMMENDED DECISION ON MOTION TO DISMISS WITH INCORPORATED MEMORANDUM OF LAW**

Plaintiff Sue Ann Draper requests the Court to review Magistrate Judge John Rich's

Recommended Decision on Motion to Dismiss pursuant to Rule 72.1 of the Rules of the United

States District Court for the District of Maine and states as follows.

**Factual Allegations**

Since childhood and all material times Sue Ann Draper has been a deaf individual who

requires an American Sign Language interpreter for effective communication. (Complaint¶7)

1

Plaintiff is and has been for several years a recipient of services from the State of Maine's Department of Health and Human Services (DHHS). (Complaint ¶10) These services require her to meet with the DHHS's representatives on a regular basis. (Complaint¶11)

On March 10, 2010 Plaintiff went to DHHS for a scheduled appointment and there was no interpreter.  (Complaint ¶12 and ¶15)  On April 21, 2010 Plaintiff went to DHHS for a scheduled appointment and there was no interpreter. (Complaint ¶21 and ¶23)  On May 5, 2010 Plaintiff went to DHHS for a scheduled appointment and there was no interpreter. (Complaint ¶27)

On April 15, 2010 Plaintiff dropped into DHHS for emergency assistance in order to remain in her home and there was no interpreter.  It is the policy and practice of the Defendants to not provide Video Remote Interpreting for American Sign Language users.  It is the policy and practice of the Defendants to provide instant interpreter services via telephone for hearing individuals with limited English proficiency. (Complaint ¶17-20)  Plaintiff has requested DHHS to provide Video Remote Interpreting so that she can communicate without having to wait weeks for an appointment or in cases where the interpreter is cancelled or does not show up.  Draper's request has been denied. (Complaint ¶28-29)

As a result of the Defendants' actions Draper has experienced inconvenience, travel expenses and other pecuniary losses, mental anguish, and emotional stress. (Complaint ¶31)

**I The Claims Against Mayhew in her Official Capacity are Not Duplicative Because the Exception under Ex Parte Young Applies**

In *Ex parte Young*, 209 U.S. 123 (1908) the Supreme Court created an exception to Eleventh Amendment immunity for suits against state officials seeking to enjoin ongoing violations of federal law. To determine whether the *Ex parte Young* exception applies "the court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Guttman v G.T. S. Khalsa*, 669 F 3d 1101, 1126 (10th Cir. 2012)

In connection with the two federal claims asserted in the complaint Magistrate Judge Rich found that the complaint could not be reasonably interpreted to allege a continuing violation of either the ADA or the Rehabilitation Act.  However 42 CFR §35.160(a)(1) of the ADA states, "A public entity shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communication with others.  Section 35.160(b) states "A public entity shall furnish appropriated auxiliary aids and services where necessary to afford qualified individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program or activity of a public entity. "

Draper alleges in her complaint that the Defendants provide those with Limited English Proficiency instant interpreting via telephone. Draper also alleges that she has requested the same instant access via Remote Video Interpreting and the Defendants refuse to provide her with Remote Video Interpreting.  Draper maintains that Defendants have not taken "appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others"

3

and that she has not been afforded "an equal opportunity to participate in, and enjoy the benefits of, a service, program or activity of a public entity."   Without Remote Video Interpreting she cannot go to DHHS on short notice to seek assistance as others can and that this is an ongoing violation of Title II of the ADA.

Draper is seeking relief that is prospective in that she has requested "an injunction enjoining Defendants to adopt and implement policies and procedures to ensure that Defendants carries out its services in a nondiscriminatory manner."   DHHS's Language Access Policy (http://www.maine.gov/dhhs/policies/dhhslanguageaccess.pdf) has no information about the use of Video Remote Interpreting, although it does contain information about telephone-based interpreting for individuals with limited English Interpreting.  If Draper were to prevail in her action she would like to see trainings and written material regarding the use of Video Remote Interpreting.

**II. The Defendants are not Immune from Suit under the ADA.**

Magistrate Judge Rich dismissed Plaintiff's ADA Count following *Buchanan*, 377 F. Supp. 2d 276 (2005). He summed up  Buchanan with a quote from the opinion, "Absent a fundamental right, based on the law as it has been developed to date, Title II [of the ADA] is not a proportional or congruent response to the recognized history of disability discrimination for mental health services."

Over eight years have passed since Buchanan, and the case law has changed.  The need for a finding of a "fundamental right" is dismissed by many courts, including the United States Supreme Court.   In *United States v Georgia*, 546 U.S.  (2006) the Court held that Title II validly

abrogates state sovereign immunity insofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment.  A few circuits have held that a violation of Title II of the ADA, which is not a violation of the Fourteenth Amendment, is sufficient and allows Congress to abrogate the sovereign immunity of states.  See *Toledo v Jorge Sanchez*, 454 F.3d 24, 40 (Ist Cir. 2006), *Association for Disabled Americans v Florida International University*, 405 F 3d 954, 959 (11 Cir. 2005), *Constantine v Rectors and Visitors of George Mason University*, 411 F. 3d 474, 490 (4th Cir. 3005)

    A.  Draper's ADA Claim

    The Eleventh Amendment grants States immunity to suits brought by private citizens in federal court.  Congress can abrogate that immunity where (1) Congress unequivocally expressed its intent to abrogate the States' sovereign immunity in the statue at issue and (2) Congress acted pursuant to a valid grant of constitutional authority.  *Kimel v Florida Board of Regents*, 528 U.S. 62, 73 (2000).   Since Congress stated in the ADA that States shall not be immune under the Eleventh Amendment from an action in State or Federal Court. 521 U.S.C. 12202, the issue before the Court is whether the statutory provision removing Eleventh Amendment immunity for private suits under Title II of the ADA is a valid exercise of Congress's authority under Section 5 of the Fourteenth Amendment.

    The Supreme Court has held that when Congress seeks to remedy or prevent unconstitutional discrimination Congress under Section 5 of the Fourteenth Amendment has the power to enact prophylactic legislation that proscribes facially constitutional conduct that is

discriminatory in effect, if not in intent, to carry out the basic objectives of the Equal Protection Clause. *Tennessee v Lane*, 541 U.S. 509, 520, 523 (2004).

In *City of Boerne v Flores*, 521 U.S. 507, 519-20 (1997) the Supreme Court held that Section 5 legislation is valid if there is "a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." To make this determination a three step analysis must be undertaken: (1) identify the constitutional right or rights that Congress sought to enforce when it enacted the ADA, (2) whether there was a history of unconstitutional discrimination to support Congress's determination that prophylactic legislation was necessary; and (3) whether Title II is an appropriate response to this history and pattern of unequal treatment.

It is not always clear what constitutional right Congress sought to enforce when it enacted the ADA. In *Tennessee v Lane*, the Supreme Court stated that Title II seeks to enforce the Fourteenth Amendment's "prohibition on irrational disability discrimination," and the constitutional guarantees under the Due Process Clause of the Fourteenth Amendment and the Confrontation Clause of the Sixth Amendment in the context of access to courts. (The Supreme Court found these rights to be fundamental rights, but the Court did not specify the need for a fundamental right to be at stake in order to satisfy the first part of the three part *Boerne* analysis. See footnote 2 *Association for Disabled Americans, Inc. v Florida International University*. 405 F 3rd 954, 957 (11th Cir 2005))

In this case Plaintiff Draper is Deaf and requires a sign language interpreter to effectively communicate. She has received services from DHHS for several years and is required to meet with DHHS representatives on a regular basis. Within less than two months Draper was not

provided an interpreter four times.  On one of those occasions she rushed to DHHS to obtain

emergency assistance to remain in her home.  DHHS does not have remote video interpreting

for times when Deaf individuals need emergency assistance, but it does provide instant

interpreting services for individuals with limited English proficiency.

Applying the Boerne three prong test for congruence and proportionality, in this case

the constitutional rights Congress sought to enforce by the ADA were Equal Protection and Due

Process rights under the Fourteenth Amendment and the right to petition the government

under the First Amendment.  These rights may be fundamental rights. However, if the Court

should find that the constitutional rights allegedly violated by the Defendants are not

fundamental, than these rights must be considered extremely important rights.

As for the second prong of the Boerne congruence and proportionality test, the

Supreme Court in *Lane*, 541 U.S. at 528, 529, considered the record supporting Title II as a

whole and conclusively held that Congress had documented a sufficient historical background

of unconstitutional disability discrimination in the provision of public services to justify

enactment of a prophylactic remedy. Specifically looking at the facts in this case, in 42 U.S.C.

§12101 "Findings and purpose" of the ADA, Congress reported in (a) (3) that discrimination

against individuals with disabilities persists in such critical areas as communication and access

to public services.   Considering the findings in *Lane* and the "findings and purpose" in the

beginning of the ADA, the second Boerne prong is satisfied in this case.

The third prong of the Boerne congruence and proportionality test – whether Title II is

an appropriate response to this history and pattern of unequal treatment- is met in this case

also.  Draper wished to communicate with her government in an attempt to acquire and

maintain services that are vital for her existence.  As mentioned above, Congress specifically

noted in 42 U.S.C. §12101 (a) (3) that discrimination against individuals with disabilities persist

in such critical areas as communication and access to public services. The consequences of

being denied needed services can be severe.  Title II's requirement of the provision of auxiliary

aids and services is not overly burdensome and is an appropriate response to the history and

pattern of unequal treatment.

Passing the congruence and proportionality test, Draper's ADA claim should not be

dismissed. An alternative to dismissing Draper's ADA claim is to follow the doctrine of

constitutional avoidance. See *Buchanan v Maine*, 469 F 3rd 158, (2006)


**III Defendants Waived their Eleventh Amendment Immunity to Draper's Rehabilitation Act
Claim by Accepting Federal Funds.**


In regards to Draper's Count III, Section 504 of the Rehabilitation Act,  Judge  Rich found

that because Defendants were entitled to dismissal of Draper's Count II ADA claim, they were

also entitled to dismissal of Draper's 504 claim.  Magistrate Judge Rich stated, "With the

exception of the Rehabilitation Act's requirement that the defendant be a recipient of federal

funds, see Complaint ¶ 45, cases interpreting the ADA and Section 504 of the Rehabilitation Act

are interchangeable for analytical purposes."  Magistrate Rich cited *Ward v Massachusetts

Health Research Inst. Inc*., 209 F.3[rd] 29 33 n 5(1st Cir 2000) and *DeCotiis v Whittemore*,  842 F

Supp. 2nd 354, 371 (D. Me. 2012).

In *DeCotiis* the court found that the plaintiff's Title V ADA claim did not need to be dismissed because it was based on a Title II ADA claim and Congress had validly abrogated sovereign immunity.  (It follows that if the ADA claim withstood a dismissal, then the 504 claim would also withstand dismissal.)  Also the court noted, "Because the State applied for and accepted funds under 504 of the Rehabilitation Act, Defendant makes no Eleventh Amendment argument with regard to Plaintiff's 504 Claim."

In this case Magistrate Rich dismissed Draper's Title II ADA claim based on sovereign immunity, but it does not follow that the 504 Count should be dismissed.  The State of Maine waived its immunity with respect to suits under 504 by accepting federal funds. See *Diaz-Fonseca v Commonwealth of Puerto Rico* F 3rd 13, at 20 2006.  Not surprisingly, in this case the State of Maine also made no Eleventh Amendment argument with regard to Plaintiff's 504 claim.

CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests that the Court dismiss the Defendants' Motion to Dismiss.

Dated: May 13, 2013                                    /s/Elizabeth Gallie

                                                       Elizabeth Gallie
                                                       Maine Center on Deafness

9

68 Bishop Street
Portland, Maine 04103
(207) 797 7656 (telephone)
(207) 797 9791 (fax)
bgallie@mcdmaine.org
Attorney for Plaintiff for Sue Ann Draper

**CERTIFICATE OF SERVICE**

I hereby certify that on May 13, 2013, I electronically filed this Reply to Defendants' Motion to

Dismiss with the Clerk of the United States District Court, District of Maine, using the CM/ECF

system, which will send notification of such filing to all parties of record in this case.

Dated: May 13, 2103                          /s/ Elizabeth Gallie

                                             Elizabeth Gallie
                                             Maine Center on Deafness
                                             68 Bishop Street
                                             Portland, Maine 04103
                                             (207) 797 7656 (telephone)
                                             (207) 797 9791 (fax)
                                             bgallie@mcdmaine.org
                                             Attorney for Plaintiff Sue Ann Draper