UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SUE ANN DRAPER                        ) | |
|           Plaintiff,           ) | |
|     v.                                           ) | 2:13-cv-00028-JAW |
| STATE OF MAINE                        ) | |
| DEPARTMENT OF HEALTH                  ) | |
| AND HUMAN SERVICES, et al.,           ) | |
|           Defendants.          ) | |

**ORDER AFFIRMING IN PART AND REJECTING IN PART THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE**

Sue Ann Draper is a woman with a hearing disability who communicates in American Sign Language and requires an interpreter to effectively communicate. Ms. Draper claims that the state of Maine Department of Health and Human Services (MDHHS) discriminated against her because of her disability when she visited MDHHS offices to obtain state services, in violation of state and federal statutory law. The Defendants move to dismiss all counts, arguing that Ms. Draper failed to state a claim and as to one count that the Eleventh Amendment immunizes the State. The Magistrate Judge recommended that the Court grant the Motion to Dismiss as to all counts against Commissioner Mary Mayhew and as to Counts II and III against the remaining Defendants but otherwise deny the motion. The Court accepts in part and rejects in part the recommended decision of the

Magistrate Judge, denying in part and sustaining in part the Defendants' Motion to Dismiss.

I.   **FACTUAL AND PROCEDURAL HISTORY**[1]

The Complaint alleges that Sue Ann Draper is a deaf individual who requires an American Sign Language (ASL) interpreter for effective communication. *Compl.* ¶ 7 (ECF No. 2-1). This disability is a "physical disability" within the meaning of the Maine Human Rights Act (MHRA), 5 M.R.S. §§ 4551 *et seq.* (2013), and a "physical impairment" that substantially limits a major life activity within the meaning of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12132 *et seq.* (2012), and § 504 of the Rehabilitation Act (Rehabilitation Act), 29 U.S.C. § 794 (2012).[2]  *Compl.* ¶ 8. The Defendants are MDHHS and Mary Mayhew in her official capacity as Commissioner of MDHHS. *Id.* ¶ 3.

Ms. Draper meets the essential eligibility requirements for the receipt of services from or the participation in programs provided by MDHHS, and has received services from MDHHS for "several years." *Id.* ¶¶ 9-10. To receive services, Ms. Draper must meet with MDHHS representatives on a regular basis. *Id.* ¶ 11. On March 10, 2010, Ms. Draper had an appointment to meet with an employee of MDHHS, for which she had requested the presence of an ASL interpreter and had verified with MDHHS that an interpreter would be present. *Id.* ¶¶ 12-14.

---

[1]   For the purposes of deciding a motion to dismiss, this Court assumes all the well-pleaded factual allegations in the complaint to be true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

[2]   "Section 504" refers to the relevant portion of the Rehabilitation Act of 1973, 87 Stat. 355 (codified as amended at 29 U.S.C. § 794 (2012)). The pleadings refer variously to "The Rehabilitation Act" and "Section 504."

However, before the meeting MDHHS cancelled the interpreter, and so none was available to assist Ms. Draper. *Id.* ¶¶ 15-16. A similar scenario occurred on April 21, 2010; Ms. Draper made an appointment, requested an ASL interpreter, and arrived to find that MDHHS had cancelled the interpreter. *Id.* ¶¶ 21-24. On April 15, 2010, Ms. Draper made an unscheduled visit to her local MDHHS office to request emergency assistance to remain in her home, but no ASL interpreter was available. *Id.* ¶¶ 17-18. Finally, on May 5, 2010 Ms. Draper had made an appointment with MDHHS and requested an ASL interpreter, but the interpreter failed to appear—although this was apparently not caused by a cancellation by MDHHS. *Id.* ¶¶ 25-27.

MDHHS has a policy of providing a telephone interpreter to help serve people with limited English proficiency. *Id.* ¶ 20. A similar service, called Video Remote Interpreting (VRI), is available to provide remote ASL interpretation, but MDHHS has made a policy choice not to provide VRI. *Id.* ¶ 19. At each visit and also immediately before filing this lawsuit, Ms. Draper requested that MDHHS provide VRI for her, but consistent with its policy, MDHHS refused. *Id.* ¶ 28-30. Ms. Draper alleges that MDHHS's failure to provide either an interpreter or VRI caused her pecuniary losses, mental anguish, and emotional distress. *Id.* ¶ 31.

This lawsuit followed. Ms. Draper complains that the Defendants violated section 4592 of the MHRA (Count I), § 12132 of the ADA (Count II), and § 504 of the Rehabilitation Act (Count III). The Defendants moved to dismiss all three counts for failure to state a claim under any of the statutes, and in the alternate to dismiss

3

Count II as barred by the Eleventh Amendment. *Def.'s Mot. to Dismiss* (ECF No. 4). In support of their Eleventh Amendment argument, the Defendants requested the Court take judicial notice of a new Language Access Policy posted on its public website, intended to ensure that "the Department . . . carries out its services in a non-discriminatory manner." *Id.* at 11 & n.4. The United States Magistrate Judge filed a Recommended Decision with the Court on April 26, 2013, recommending dismissal of all counts except Count I as to MDHHS. *Recommended Decision on Mot. to Dismiss* at 10 (ECF No. 8) (*Rec. Dec.*).

Ms. Draper urges that the counts against the Commissioner should not be dismissed under the Eleventh Amendment because the Commissioner falls into the *Ex parte Young* exception to the doctrine of sovereign immunity. Furthermore, she maintains that sovereign immunity is also not available to MDHHS because Congress validly abrogated state sovereign immunity as to Title II of the ADA. Finally, as to Count III alone, Ms. Draper asserts that the state has waived sovereign immunity by accepting federal funds under the Rehabilitation Act. Defendants, for their part, press their Eleventh Amendment defense as to Count II. They also argue for dismissal of Count III on the merits, arguing that Ms. Draper failed to allege that she was denied access to any services or programs when MDHHS failed to have an interpreter on hand or to provide VRI.

4

## II.   DISCUSSION

### A.   Standard of Review

A district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made" when a party objects to the recommendation of a magistrate judge. 28 U.S.C. § 636(b)(1) (2012).

### B.   Count I

The Magistrate Judge correctly noted that Ms. Draper presented no objection to the Defendants' Motion to Dismiss Count I as to Commissioner Mayhew. *Rec. Dec.* at 4. Ms. Draper likewise made no objection to this conclusion in the Recommended Decision. *Pl.'s Objection* at 1-10. In the absence of objection and having reviewed the merits of the motion, the Court will dismiss Count I as to the Commissioner. In the opposite vein, the Defendants have not objected to the Magistrate Judge's recommendation that Count I survives dismissal as to MDHHS to the extent Ms. Draper is seeking relief other than compensatory damages. The Court agrees with the Magistrate Judge's recommendation.

### C.   Count II

Count II alleges a violation of § 12132 of the ADA. Specifically, Ms. Draper argues that the Defendants violated § 12132 by failing to provide her with interpreters or VRI. Consequently, she argues, MDHHS excluded her from participation in the benefit of the services it provides, and also subjected her to discrimination because of her disability. The Defendants assert both that Ms.

5

Draper failed to state a claim under the ADA and also that, even if the claim has merit, the Eleventh Amendment bars it. The Court disagrees with the Magistrate Judge's analysis and recommendation that Count II be dismissed.

The Supreme Court has interpreted the Eleventh Amendment to deprive the federal courts of subject matter jurisdiction over suits by any citizen against any state. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). This immunity extends to agencies under state control. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). It also applies to state officials sued in their official capacity, except when the suit seeks to enjoin continuing violations of the federal Constitution. *Ex parte Young*, 209 U.S. 123, 159-60 (1908). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).

    1.  **Commissioner Mayhew**

The Defendants assert the Eleventh Amendment as a defense to Count II. *Def's Mot. to Dismiss* at 9. Technically the Eleventh Amendment defense goes to the subject matter jurisdiction of the Court. However, consistent with "the doctrine of constitutional avoidance," before reaching the Eleventh Amendment defense, the Court must first analyze the merits of the underlying claim; if it fails, the Court need not and should not consider the Eleventh Amendment. *Buchanan v. Maine*,

469 F.3d 158, 172-73 (1st Cir. 2006) (*Buchanan II*). As the First Circuit wrote in *Buchanan II*, "[u]nder [*United States v. Georgia*, 546 U.S. 151 (2006)], the court must determine in the first instance, on a claim-by-claim basis, which aspects of the State's alleged conduct violated [the ADA]. If the State's conduct does not violate [the ADA], the court does not proceed to the next step in the analysis. The claim ends." *Id.* at 172-73.

On the merits of Count II, Ms. Draper has alleged facts sufficient to state a "failure to accommodate" claim under ADA § 12132. In this respect, the Magistrate Judge properly analyzed the merits of Count II with respect to MDHHS. *Rec. Dec.* at 7-8. To state disability discrimination claims under the ADA, a plaintiff must establish

> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

*Parker v. Universidad de P.R.*, 225 F.3d 1, 5 (1st Cir. 2000). Even assuming, as MDHHS claims, that failing to provide a disabled person with the accommodation of her choice is not by itself unlawful discrimination, MDHHS's failure to provide VRI when Ms. Draper requested it is not the only leg of her ADA claim. She also alleges that MDHHS discriminates against people with hearing impairment (including herself) through its policy choice to provide on-demand translation to people who communicate in spoken language while denying it to people who must communicate in visual language. *Compl.* ¶¶ 20, 30. In other words, paragraphs 20 and 30 allege that MDHHS has chosen not to provide translation services based on the specific

7

disability of individuals with hearing impairments. *See id.* ¶¶ 20, 30. In statutory terms, Ms. Draper alleges that this policy decision "otherwise discriminates" against hearing impaired individuals based on their disability. Ms. Draper's other factual allegations are the source of her standing to bring this claim—injury in fact, causation, and redressability—but Ms. Draper states a facial claim of discrimination in Count II of the Complaint and her allegations withstand dismissal.

Having concluded that Count II survives dismissal on its merits, the Court turns to the Eleventh Amendment defense. *Buchanan II*, 569 F.3d at 172-73. Ms. Draper asserts that her case falls into the *Ex parte Young* exception to the Eleventh Amendment; the Court agrees.

The Magistrate Judge concluded that Count II should be dismissed as to Commissioner Mayhew because the Complaint fails to allege any ongoing violation of the federal Constitution that would implicate *Ex parte Young*. *Rec. Dec.* at 5-6. However, the Complaint alleges that MDHHS has a policy to provide telephonic interpretation to people who require spoken-language interpretation but refuses to provide an analogous service to people requiring ASL interpretation. *Compl.* ¶¶ 20, 30. This alleged difference in treatment of a class of people based on disability could violate the Equal Protection Clause of the Fourteenth Amendment, and therefore states a claim under ADA § 12132. *See Buchanan v. Maine*, 377 F. Supp. 2d 276, 283 (D. Me. 2005), *aff'd on other grounds*, 469 F.3d 158 (1st Cir. 2006) (*Buchanan I*) (stating that, although Title II of the ADA does not validly abrogate

8

state sovereign immunity, disability discrimination nonetheless could be considered a violation of the Equal Protection Clause subject to rational basis review).

Ms. Draper has also requested prospective relief that addresses the substance of the alleged constitutional violation. *Rec. Dec.* at 6. She requests an injunction that requires the Defendants "to adopt and implement policies and procedures to ensure that Defendants carr[y] our [their] services in a nondiscriminatory manner." *Compl.* at 7. The Court takes judicial notice of the new MDHHS Language Access Policy (Policy). *See Chmielinski v. Mass. Office of the Comm'r of Prob.*, 513 F.3d 309, 312 n.1 (1st Cir. 2008) ("In reviewing a rule 12(b)(6) motion, [a court] may consider 'documents the authenticity of which are not disputed by the parties . . . documents central to plaintiffs' claim; [and] documents sufficiently referred to in the complaint'") (quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)); *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998).[3]

The Policy presents two stumbling blocks against dismissal. The first is that the Policy does not render Ms. Draper's claim for relief any less prospective. The gist of the Defendants' argument seems to be that the Policy makes Ms. Draper's request "moot," a reference by analogy to the law of standing. *Def.'s Mot. to Dismiss* at 11. However, "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). Here, the fact that

---

[3] Ms. Draper has not objected to the Court's consideration of the terms of the MDHHS Policy.

MDHHS issued a new policy does not guarantee for the purpose of determining jurisdiction that it will not revert to its old practice.[4]

At the same time, the Court is chary about concluding that having attained dismissal of this lawsuit by adopting a new policy, MDHHS officials would cynically reinstate the old policy once the lawsuit was dismissed. As the First Circuit has explained, "[t]he [voluntary cessation] exception, to be invoked, also requires some reasonable expectation of recurrences of the challenged conduct." *ACLU of Mass. v. U.S. Conference of Catholic Bishops*, 705 F.3d 44, 55 (1st Cir. 2013). In *ACLU*, the First Circuit gave "some weight" to the fact that "the defendants are high-ranking federal officials, including a cabinet member, who have, as a matter of policy, abandoned the prior practice and adopted a concededly constitutional requirement." *Id.* at 56. Guided by *ACLU*, this Court will not conclude that the state of Maine officials at MDHHS, including a state cabinet officer, will abandon the new Policy in favor of the old one once the lawsuit is over. The Defendants cleared one stumbling block.

Another remains. In her objection, Ms. Draper questions the sufficiency of the new Policy. *Pl.'s Objection to Rec. Dec.* at 4 (ECF No. 13). She emphasizes that the Policy "has no information about the use of Video Remote Interpreting, although it does contain information about telephone-based interpreting for individuals with limited English interpreting." *Id.* She also contends that the MDHHS should demonstrate "trainings and written material regarding the use of Video Remote

---

[4]  MDHHS has not, for example, rendered this issue "moot" by entering into a consent decree binding it to the terms of the Policy.

10

Interpreting." *Id.* Even though the Defendants respond that Ms. Draper is not entitled to receive "the accommodation she most prefers," *Defs.' Resp. to Pl.'s Objection to Rec. Dec.* at 4 (ECF No. 14), there remains a factual dispute as to whether the Policy—which does not appear to require VRI—provides sufficient accommodation to equalize the treatment of deaf persons.

Because Ms. Draper's Complaint has made out the elements required to bring the Commissioner within the *Ex parte Young* exception and there remain factual issues concerning the application of the voluntary cessation exception to the mootness doctrine, Count II may not be dismissed as to the Commissioner on sovereign immunity grounds.

### 2. MDHHS

First, the Count II claim against MDHHS survives dismissal on the merits for the same reasons set forth above with respect to the Commissioner. Thus, the Court must once again consider the Eleventh Amendment defense. *Buchanan II*, 469 F.3d at 172-73.

MDHHS is an agency of the state of Maine, and for Eleventh Amendment purposes a suit against the agency is a suit against the state. *P.R. Aqueduct & Sewer Auth.*, 506 U.S. at 144. The *Ex parte Young* exception to the Eleventh Amendment for suits against state officers in their official capacities does not extend to suits against state agencies. *Irizarry-Mora v. Univ. of P.R.*, 647 F.3d 9, 11 n.1 (1st Cir. 2011). However, under a narrow range of circumstances, Congress may strip a state of sovereign immunity with respect to a statute enacted under § 5 of

the Fourteenth Amendment. *Seminole Tribe*, 517 U.S. at 55-56. Title II of the ADA purports to perform just such an abrogation with respect to violations of Title II. 42 U.S.C. § 12202 (2012).

The Supreme Court has defined a three step analysis to determine when the Title II abrogation of sovereign immunity is effective:

> [The court should determine,] on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Georgia*, 546 U.S. at 159.

Here the conduct alleged to violate Title II is the facial discrimination by MDHHS between people who require spoken-language translation and people who require sign-language translation. Such conduct *might* violate the Fourteenth Amendment under rational basis review. *See Buchanan I*, 377 F. Supp. 2d at 283; section II.C.1, *supra*. However, this Court previously concluded that only fundamental rights trigger sovereign immunity abrogation under Title II, and disability is not such a right. *Buchanan I*, 377 F. Supp. 2d at 283.

The First Circuit decision in *Toledo v. Sanchez* adds some weight to this conclusion. 454 F.3d 24, 33-34 (1st Cir. 2006). In *Toledo*, the First Circuit determined that discrimination based on disability remains subject only to rational basis review, and that it does not violate the Fourteenth Amendment for the purpose of applying the second stage of the *Georgia* analysis. *Id.* at 33 ("The disabled are not a suspect class for equal protection purposes"); *see also Pope v.*

*Bernard*, No. 10-1443, 2011 WL 478055, at *3 (1st Cir. Feb. 10, 2011) (reiterating that disability discrimination remains subject only to rational basis review). Likewise, the Supreme Court recently held that the provision of the Family Medical Leave Act purporting to abrogate state sovereign immunity was not valid as applied to the Act's requirement that an employer grant employees a "self-care" leave of absence. *Coleman v. Court of Appeals of Md.*, 132 S. Ct. 1327, 1332, 1335 (2012). The Court reasoned that discrimination "on the basis of illness" was not sufficient to support an abrogation of sovereign immunity. *Id.* at 1335. Although the Court suggested that sex discrimination might be sufficient to support abrogation, it held that the Act was "not congruent or proportional" to sex discrimination. *Id.* at 1335.

In sum, the Court cannot conclude that the alleged disability discrimination here violates the Fourteenth Amendment for the purposes of abrogating sovereign immunity.

Because application of the first two steps in *Georgia* leaves Ms. Draper alleging conduct that only violates Title II, not the Fourteenth Amendment, the Court moves to the third step to determine if "Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Georgia*, 546 U.S. at 159. However, this Court has already performed this same analysis in *Buchanan I* and concluded that the Title II abrogation of sovereign immunity is not valid for access to state mental health services.[5] 377 F. Supp. 2d at 279-83. Ms.

---

[5] In *Buchanan I*, the Court noted that "the closest First Circuit case is *Kiman v. New Hampshire Dep't of Corrections*, [2001 WL 1636431 (D.N.H. Dec. 19, 2001)]," but *Kiman* was then on appeal. *Buchanan I*, 377 F. Supp. 2d, at 282 n.8. After the Supreme Court's decision in *Lane*, the

Draper offers no compelling reason to abandon that reasoning, and the Court stands by it.[6]

Although MDHHS's alleged facial discrimination would violate ADA § 12132, MDHHS may assert the Eleventh Amendment as a bar because the discrimination does not violate a fundamental right protected by the Fourteenth Amendment, and Congress has not validly abrogated the State's sovereign immunity. To be clear, this somewhat technical result does not mean that the law condones the discrimination that Ms. Draper alleges; rather, it means that the proper remedy against the State lies in the state statute, the MHRA, not the federal one, Title II of the ADA.

### 3. Conclusion as to Count II

Count II of the Complaint states a claim on which the law may grant relief. Because *Ex parte Young* permits Ms. Draper to seek prospective relief against

---

First Circuit decided that the *Kiman* plaintiff's claims might have merit under the first step of the *Georgia* analysis and remanded the matter to the District Court for reconsideration both of the merits and of the Eleventh Amendment bar. *Kiman v. N.H. Dep't of Corrections*, 451 F.3d 274, 281-82 (1st Cir. 2006). On remand the District Court determined that the defendants had abandoned their sovereign immunity defense and therefore did not reach the issue. *Kiman v. N.H. Dep't of Corrections*, No. 01-cv-134-JD, 2007 WL 2247843, at *6 (D.N.H. Aug. 1, 2007). Consequently the *Kiman* litigation did not produce any further guidance from the First Circuit on this issue.

[6] Using this same logic, the Tenth Circuit concluded that "the area of professional licensing does not implicate a traditional category of fundamental rights." *Guttman v. Khalsa*, 669 F.3d 1101, 1123 (10th Cir. 2012). By contrast, in *Toledo*, the First Circuit concluded that the Supreme Court's "decisions under the Equal Protection Clause suggest that states cannot categorically deny disabled students access to public education," that there was a record of "persistent unconstitutional state action," and Congress was "justified in enacting prophylactic § 5 legislation in response." *Toledo*, 454 F.3d at 36-39. Thus, the disability claim in *Toledo* was tethered to another essential, though not fundamental right—the right to a free public education. *Id.* at 33. Here, Ms. Draper claims that the state of Maine denied her access to state services at MDHHS, services that are important but do not rise to the level of the right to a free public education. *See Guttman*, 669 F.3d at 1124 n.4 ("Discrimination against students in public education is an exception that proves the rule"); *see also Coleman*, 132 S. Ct. at 1335, 1337 (discounting the constitutional weight of discrimination "on the basis of illness").

Commissioner Mayhew in her official capacity, Count II survives dismissal as against the Commissioner. However, Count II must be dismissed as against MDHHS because the Department is immune from suit under the Eleventh Amendment.

### D. Count III

Count III alleges a violation of § 504 of the Rehabilitation Act. As the Magistrate Judge observed, "with the exception of the Rehabilitation Act's requirement that the Defendant be a recipient of federal funds, *see* [*Compl.* ¶ 45], cases interpreting the ADA and Section 504 of the Rehabilitation Act are interchangeable for analytical purposes." *Rec. Dec.* at 10 (citing *Ward v. Mass. Health Research Inst., Inc.*, 209 F.3d 29, 33 n.5 (1st Cir. 2000); *DeCotiis v. Whittemore*, 842 F. Supp. 2d 354, 371 (D. Me. 2012)).

However, it follows that the Court cannot agree with the Magistrate Judge's recommendation to dismiss Count III "for the reasons stated [as to Count II]." *Rec. Dec.* at 10. First, Count III survives as to Commissioner Mayhew for the same reasons that Count II survives. Second, as to MDHHS, the Defendants did not assert the Eleventh Amendment as a defense against Count III. *See Def.'s Mot to Dismiss* at 9-11 (asserting the Eleventh Amendment as a bar only to Count II). As detailed above, the Count II claim would survive against MDHHS as well but for sovereign immunity, and because the Defendants did not claim sovereign immunity as a defense to Count III, Count III survives dismissal against both Defendants on the merits.

### III. CONCLUSION

The Court AFFIRMS the Magistrate Judge's recommendation on Count I as against all Defendants and on Count II as against MDHHS. The Court REJECTS the Magistrate Judge's recommendation on Count II as against Commissioner Mayhew and on Count III as against all Defendants.

1. The Court DISMISSES Count I against Commissioner Mayhew;
2. The Court DISMISSES Count II against MDHHS; and
3. The Court DENIES the Defendants' Motion to Dismiss in all other respects.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 27th day of August, 2013